UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON GIBSON and On Behalf of All Others Similarly Situated,

Plaintiff,

-against-

RIVERS AND HILLS HOSPITALITY GROUP LLC d/b/a WAYLA and 100 FORSYTH, LLC,

Defendants.

Case No.: 1:23-cv-00348

**COMPLAINT**

**Jury Trial Demanded**

## INJUNCTIVE RELIEF SOUGHT

Plaintiff, JASON GIBSON, on behalf of himself and for the benefit of all others similarly situated, by and through the undersigned counsel, and in accordance with the Federal Rules of Civil Procedure and all other applicable rules, statutes, regulations, and governing legal authorities, hereby files the instant Complaint against Defendants RIVERS AND HILLS HOSPITALITY GROUP LLC D/B/A WAYLA and 100 FORSYTH, LLC and for violations of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

## NATURE OF THE CLAIMS

1.     This lawsuit opposes pervasive, ongoing, and inexcusable disability discrimination by the Defendants.  In this action, plaintiff seeks declaratory, injunctive and equitable relief, as well as monetary damages and attorney's fees, costs and expenses to redress Defendants unlawful disability discrimination against plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 et seq. and its implementing regulation, the New York State Executive Law (the "Executive Law") § 296, the New York State Civil Rights Law § 40, and the Administrative Code of the City of New York (the "Administrative Code") § 8-107. Plaintiff also alleges a claim for Negligence.  As explained more fully below, the Defendants own lease, lease to, operate and control a place of public accommodation that violates the above-mentioned laws.  Defendants are vicariously liable for the acts and omissions

*Gibson v. Rivers and Hills  et al*
*Complaint*
*1 | P a g e*

of their employees and agents for the conduct alleged herein.

## JURISDICTIONAL ALLEGATIONS

2.      This is an action for injunctive relief for violations of the Americans with Disabilities Act (hereinafter "ADA") entitling plaintiff to attorneys' fees, litigation expenses and costs expended in pursuing this action in accordance with 28 U.S.C. § 12181 *et seq.*

3.      Defendant 100 FORSYTH, LLC is a domestic limited liability company duly licensed to conduct business in New York State.  Defendant 100 FORSYTH, LLC is the owner of the property located at 100 Forsyth St., New York, New York 10002, County of New York, State of New York (hereinafter the "Premises.")

4.      Defendant-Operator RIVERS AND HILLS HOSPITALITY GROUP LLC D/B/A WAYLA is a foreign limited liability company licensed to and doing business in New York State. Defendant RIVERS AND HILLS HOSPITALITY GROUP LLC D/B/A WAYLA is the operator of the property located at 100 Forsyth St., New York, New York 10002, County of New York, State of New York (hereinafter the "Premises").

5.      Defendants 100 FORSYTH, LLC and RIVERS AND HILLS HOSPITALITY GROUP LLC D/B/A WAYLA are collectively referred to herein as ("Defendants").

6.      Plaintiff JASON GIBSON is an adult male confined to a wheelchair.  Plaintiff, is incapable of moving around outside of his home without assistance and a wheelchair.  He has further restrictions, speaking, caring for himself, or performing any other tasks associated with daily living. Plaintiff resides in New York, New York.

7.      This Court has original jurisdiction over claims arising under Title III of the Americans with Disabilities Act (*see* 42 U.S.C. § 12181 *et seq.*; 28 U.S.C. §§ 2201-2202)

*Gibson v. Rivers and Hills  et al
Complaint
2 | P a g e*

pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of plaintiff's right under the ADA. The Court has supplemental jurisdiction over plaintiffs' related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

8.      Venue properly lies in the Southern District of New York pursuant to 28 U.S.C. §1391 because Defendants acts of discrimination alleged herein occurred in this district and Defendants' place of public accommodation that are the subject of this action are located in this district.

## **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

9.      The Defendants are public accommodations as they own, lease, lease to, control or operate a place of public accommodation, RIVERS AND HILLS HOSPITALITY GROUP LLC D/B/A WAYLA located at the Premises, within the meaning of the ADA (42 U.S.C. §12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)), and the Administrative Code (§ 8-102(9)).

10.     RIVERS AND HILLS HOSPITALITY GROUP LLC D/B/A WAYLA is a place of public accommodation within the meaning of the ADA (42 U.S.C. §12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)), and the Administrative Code (§ 8-102(9)) as the facility is operated by a private entity as a retail establishment and its operations affect commerce.

11.     On or about, August 22, 2022 plaintiff attempted to access the business.

12.     On or about, August 22, 2022 plaintiff discovered that the premises contained, architectural barriers at Defendants' place of public accommodation that prevents and/or restricts access to plaintiff, a person with a disability.

13.     The services, features, elements and spaces of Defendants' place of public accommodation are not readily accessible to, or usable by the plaintiff as required by the ADA Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States

*Gibson v. Rivers and Hills  et al*
*Complaint*
*3 | P a g e*

Department of Justice in 1991 or the revised final regulation implementing Title III of the ADA adopted by the United States Department of Justice in 2010 (all  hereinafter referred to as the "Accessibility Standards").

14.    The services, features, elements and spaces of Defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Administrative Code § 27-292 *et. seq*.

15.    Because of Defendants' failure to comply with the above-mentioned laws, including but not limited to the Accessibility Standards and the Administrative Code, plaintiff was and has been unable to enjoy equal and complete access to Defendants' place of public accommodation.

16.    Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the Accessibility Standards, the Administrative Code or the Building Code of the City of New York ("BCCNY").

17.    Plaintiff and her primary caretaker enjoy going out for daily activities, such as shopping. Plaintiff can't perform daily activities outside the house without the use of a wheelchair.

18.    Plaintiff visited the property which forms the basis of this lawsuit but encountered architectural barriers at the subject property precluding  them from reasonably accessing the goods and services provided to non-disabled individuals. The barriers to access at the Premises have deterred plaintiff from availing herself of and are denying her the opportunity to participate and benefit from the goods, services, privileges, advantages, facilities and accommodations at Defendants' property equal to that afforded to other individuals.

19.    Defendants have and are continuing to discriminate against plaintiff and other similarly situated disabled individuals by failing to provide  accessible facilities on or before

*Gibson v. Rivers and Hills  et al*
*Complaint*
*4 | P a g e*

January 26, 1992[1] in violation of the ADA.

20.    More specifically, plaintiff is being deprived of the meaningful choice  of freely visiting the same accommodations readily available to the general public and plaintiff is further deterred and discouraged from additional travel due to Defendant's ongoing non-compliance with the ADA.

21.    Barriers to access that plaintiff encountered and/or which exist at the Defendants' place of public accommodation include, but are not limited to, the barriers identified below:

Site Arrival:

I.    There does not appear to be an accessible route from the public sidewalk to the building entrance. See below.
   a.    *Defendants fail to provide an accessible route within the site from public streets or sidewalks to the building entrance. See 1991 Standards 4.1.2(1), 2010 Standards 206.2.1, and 2014 NYC 1104.1.*

Public Entrance:

II.    The public entrance does not appear to be accessible. See below.
   *Defendants fail to provide that at least 50% of all its public entrances are accessible. See 1991 Standards 4.1.3.8(a)(i). Defendants fail to provide that at least 60% of all its public entrances are accessible. See 2010 Standards 206.4.1. Defendants fail to provide that all its public entrances are accessible. See 2014 NYC 1105.1.*

III.    The exterior entrance doorway appears to lack level maneuvering clearances at the pull side of the doorway due to sloping.
   *Defendants fail to provide an accessible door with level maneuvering clearances. See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

Interior:

I.    INACCESSIBLE EXTERIOR DINING COMPARTMENT. RISE IN GROUND SURFACE AT TRAVEL PATH LEADING TO EXTERIOR DINING COMPARTMENT ACTS AS A BARRIER TO ACCESSIBILITY. REQUIRED RAMP NOT PROVIDED FOR RISE IN GROUND SURFACE AT EXTERIOR

---

[1] A "place of public accommodation" having ten (10) or fewer employees **and** gross receipts totaling five hundred thousand dollars or less ($500,000.00) shall have until January 26, 1993 to ensure compliance with the ADA.

*Gibson v. Rivers and Hills  et al*
*Complaint*
**5 |** *P a g e*

DINING COMPARTMENT.

a. *ADAAG 206.2.5 Restaurants and Cafeterias. In restaurants and cafeterias, an accessible route shall be provided to all dining areas, including raised or sunken dining areas, and outdoor dining areas. ADAAG 206 Accessible Routes ADAAG 206.1 General. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4. ADAAG 403 Walking Surfaces ADAAG 403.4 Changes in Level. Changes in level shall comply with 303 ADAAG 303.4 Ramps. Changes in level greater than ½ inch high shall be ramped, and shall comply with 405 or 406.*

II.  INACCESSIBLE DINING TABLES LOCATED AT EXTERIOR DINING COMPARTMENT. REQUIRED MINIMUM CLEAR WIDTH NOT PROVIDED AT TRAVEL PATH TO DINING TABLES WITHIN EXTERIOR DINING COMPARTMENT.

a. ADAAG 402 Accessible Routes ADAAG 402.1 General. Accessible routes shall comply with 402. ADAAG 402.2 Components. Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4. ADAAG 403 Walking Surfaces ADAAG 403.1 General. Walking surfaces that are a part of an accessible route shall comply with 403. ADAAG 403.5.1 Clear Width. Except as provided in 403.5.2 and 403.5.3, the clear width of walking surfaces shall be 36 inches (915 mm) minimum.

III.  REQUIRED MINIMUM KNEE AND TOE CLEARANCE NOT PROVIDED AT DINING TABLES LOCATED AT EXTERIOR DINING COMPARTMENT. A MINIMUM PERCENTAGE OF EXISTING DINING TABLES REQUIRED TO BE ACCESSIBLE NOT PROVIDED AT EXTERIOR DINING COMPARTMENT.

a. *ADAAG 226 Dining Surfaces and Work Surfaces ADAAG 226.1 General. Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902. ADAAG 902 Dining Surfaces and Work Surfaces ADAAG 902.1 General. Dining surfaces and work surfaces shall comply with 902.2 and 902.3. ADAAG 902.2 Clear Floor or Ground Space. A clear floor space complying with 305 positioned for a forward approach shall be provided. Knee and toe clearance complying with 306 shall be provided. ADAAG 306.2 Toe Clearance. ADAAG 306.2.3 Minimum Required Depth. Where toe clearance is required at an element as part of a clear floor space, the toe clearance shall extend 17 inches (430 mm) minimum under the element. ADAAG 306.2.5 Width. Toe clearance shall be 30 inches (760 mm) wide minimum. ADAAG 306.3 Knee Clearance. ADAAG 306.3.3 Minimum Required Depth. Where knee clearance is required under an element as part of a clear floor space, the knee clearance shall be 11 inches deep minimum at 9 inches above the ground, and 8 inches deep minimum at 27 inches (685 mm) above the finish floor or ground. ADAAG 306.3.5 Width. Knee clearance shall be 30 inches (760 mm) wide minimum.*

*Gibson v. Rivers and Hills et al*
*Complaint*
**6** | *P a g e*

IV.   INACCESSIBLE BAR. NON-COMPLIANT HEIGHT OF BAR EXCEEDS MAXIMUM HEIGHT ALLOWANCE. REQUIRED MINIMUM KNEE AND TOE CLEARANCE NOT PROVIDED AT BAR. PORTION OF BAR REQUIRED TO BE ACCESSIBLE NOT PROVIDED.

a.   *ADAAG 226 Dining Surfaces and Work Surfaces ADAAG 226.1 General. Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902. ADAAG 902 Dining Surfaces and Work Surfaces ADAAG 902.1 General. Dining surfaces and work surfaces shall comply with 902.2 and 902.3. Advisory 902.1 General. Dining surfaces include, but are not limited to, bars, tables, lunch counters, and booths. ADAAG 902.2 Clear Floor or Ground Space. A clear floor space complying with 305 positioned for a forward approach shall be provided. Knee and toe clearance complying with 306 shall be provided. ADAAG 902.3 Height. The tops of dining surfaces and work surfaces shall be 28 inches (710 mm) minimum and 34 inches (865 mm) maximum above the finish floor or ground. ADAAG 306.2 Toe Clearance. ADAAG 306.2.3 Minimum Required Depth. Where toe clearance is required at an element as part of a clear floor space, the toe clearance shall extend 17 inches (430 mm) minimum under the element. ADAAG 306.2.5 Width. Toe clearance shall be 30 inches (760 mm) wide minimum. ADAAG 306.3 Knee Clearance. ADAAG 306.3.3 Minimum Required Depth. Where knee clearance is required under an element as part of a clear floor space, the knee clearance shall be 11 inches deep minimum at 9 inches above the ground, and 8 inches deep minimum at 27 inches (685 mm) above the finish floor or ground. ADAAG 306.3.5 Width. Knee clearance shall be 30 inches (760 mm) wide minimum.*

V.   COMPLIANT SIGNAGE IDENTIFYING THE FIRST OF TWO RESTROOMS NOT PROVIDED AS REQUIRED.

a.   *ADAAG 216 Signs ADAAG 216.1 General. Signs shall be provided in accordance with 216 and shall comply with 703. ADAAG 216.2 Designations. Interior and exterior signs identifying permanent rooms and spaces shall comply with 703.1, 703.2, and 703.5. Where pictograms are provided as designations of permanent interior rooms and spaces, the pictograms shall comply with 703.6 and shall have text descriptors complying with 703.2 and 703.5. Advisory 216.2 Designations. Section 216.2 applies to signs that provide designations, labels, or names for interior rooms or spaces where the sign is not likely to change over time. Examples include interior signs labeling restrooms, room and floor numbers or letters, and room names. Tactile text descriptors are required for pictograms that are provided to label or identify a permanent room or space. Pictograms that provide information about a room or space, such as "no smoking," occupant logos, and the International Symbol of Accessibility, are not required to have text descriptors. ADAAG 703.1 General. Signs shall comply with 703. Where both visual and tactile characters are required, either one sign with both visual and tactile characters, or two separate signs, one with visual, and one with tactile characters, shall be provided. ADAAG 703.4.1 Height Above Finish Floor or Ground. Tactile characters on signs shall be located 48 inches (1220 mm)*

*Gibson v. Rivers and Hills  et al*
*Complaint*
7 | P a g e

*minimum above the finish floor or ground surface, measured from the baseline of the lowest tactile character and 60 inches (1525 mm) maximum above the finish floor or ground surface, measured from the baseline of the highest tactile character. ADAAG 703.4.2 Location. Where a tactile sign is provided at a door, the sign shall be located alongside the door at the latch side. Where a tactile sign is provided at double doors with one active leaf, the sign shall be located on the inactive leaf. Where a tactile sign is provided at double doors with two active leafs, the sign shall be located to the right of the right hand door. Where there is no wall space at the latch side of a single door or at the right side of double doors, signs shall be located on the nearest adjacent wall. Signs containing tactile characters shall be located so that a clear floor space of 18 inches (455 mm) minimum by 18 inches (455 mm) minimum, centered on the tactile characters, is provided beyond the arc of any door swing between the closed position and 45 degree open position.*

VI.  THE FIRST OF TWO RESTROOMS IS INACCESSIBLE. INACCESSIBLE TRAVEL PATH LEADING TO THE FIRST OF TWO RESTROOMS. ACCESSIBLE ROUTE TO THE FIRST OF TWO RESTROOMS NOT PROVIDED. REQUIRED MINIMUM CLEAR WIDTH NOT PROVIDED AT TRAVEL PATH TO THE FIRST OF TWO RESTROOMS.

  a.  *ADAAG 206 Accessible Routes ADAAG 206.1 General. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4. ADAAG 402 Accessible Routes ADAAG 402.1 General. Accessible routes shall comply with 402. ADAAG 402.2 Components. Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4. ADAAG 403 Walking Surfaces ADAAG 403.1 General. Walking surfaces that are a part of an accessible route shall comply with 403. ADAAG 403.5.1 Clear Width. Except as provided in 403.5.2 and 403.5.3, the clear width of walking surfaces shall be 36 inches (915 mm) minimum.*

VII.  REQUIRED MINIMUM MANEUVERING CLEARANCE NOT PROVIDED AT DOOR OF THE FIRST OF TWO RESTROOMS.

  a.  ADAAG 206 Accessible Routes ADAAG 206.1 General. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4. ADAAG 402 Accessible Routes ADAAG 402.1 General. Accessible routes shall comply with 402. ADAAG 402.2 Components. Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4. ADAAG 404.2.4 Maneuvering Clearances. Minimum maneuvering clearances at doors and gates shall comply with 404.2.4. Maneuvering clearances shall extend the full width of the doorway and the required latch side or hinge side clearance.

*Gibson v. Rivers and Hills et al*
*Complaint*
**8 | P a g e**

VIII.   NON-COMPLIANT RISE IN FLOOR LEVEL AT THRESHOLD OF DOOR AT THE FIRST OF TWO RESTROOMS ACTS AS A BARRIER TO ACCESSIBILITY. REQUIRED RAMP NOT PROVIDED FOR RISE IN FLOOR LEVEL AT THRESHOLD OF DOOR AT THE FIRST OF TWO RESTROOMS.

   a. *ADAAG 206 Accessible Routes ADAAG 206.1 General. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4. ADAAG 402 Accessible Routes ADAAG 402.1 General. Accessible routes shall comply with 402. ADAAG 402.2 Components. Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4. ADAAG 404 Doors, Doorways, and Gates ADAAG 404.2.5 Thresholds. Thresholds, if provided at doorways, shall be ½ inch (13 mm) high maximum. Raised thresholds and changes in level at doorways shall comply with 302 and 303. ADAAG 303.4 Ramps. Changes in level greater than ½ inch high shall be ramped, and shall comply with 405 or 406.*

IX.   REQUIRED MINIMUM CLEAR WIDTH NOT PROVIDED AT DOOR OF THE FIRST OF TWO RESTROOMS.

   a. *ADAAG 206 Accessible Routes ADAAG 206.1 General. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4. ADAAG 402 Accessible Routes ADAAG 402.1 General. Accessible routes shall comply with 402. ADAAG 402.2 Components. Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4. ADAAG 404.2.3 Clear Width. Door openings shall provide a clear width of 32 inches (815 mm) minimum. Clear openings of doorways with swinging doors shall be measured between the face of the door and the stop, with the door open 90 degrees.*

X.   NON-COMPLIANT DOOR LOCK AT DOOR OF THE FIRST OF TWO RESTROOMS REQUIRES TWISTING OF THE WRIST.

   a. *ADAAG 404 Doors, Doorways, and Gates ADAAG 404.2.7 Door and Gate Hardware. Handles, pulls, latches, locks, and other operable parts on doors and gates shall comply with 309.4 ADAAG 309.4 Operation. Operable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The force required to activate operable parts shall be 5 pounds maximum.*

XI.   REQUIRED MINIMUM TURNING SPACE NOT PROVIDED IN THE FIRST OF TWO RESTROOMS.

   a. *ADAAG 603 Toilet and Bathing Rooms ADAAG 603.1 General. Toilet and bathing rooms shall comply with 603. ADAAG 603.2 Clearances. Clearances shall comply with 603.2. ADAAG 603.2.1 Turning Space. Turning space*

*complying with 304 shall be provided within the room. ADAAG 304.3.1*
*Circular Space. The turning space shall be a space of 60 inches (1525 mm)*
*diameter minimum. The space shall be permitted to include knee and toe*
*clearance complying with 306.*

XII. INACCESSIBLE WATER CLOSET IN THE FIRST OF TWO RESTROOMS.
REQUIRED MINIMUM CLEARANCE NOT PROVIDED AT WATER
CLOSET IN THE FIRST OF TWO RESTROOMS.

    *a.   ADAAG 604 Water Closets and Toilet Compartments ADAAG 604.3*
*Clearance. Clearances around water closets and in toilet compartments shall*
*comply with 604.3. ADAAG 604.3.1 Size. Clearance around a water closet*
*shall be 60 inches (1525 mm) minimum measured perpendicular from the side*
*wall and 56 inches (1420 mm) minimum measured perpendicular from the*
*rear wall.*

XIII. REQUIRED GRAB BARS NOT PROVIDED ON REAR AND SIDE WALLS
OF WATER CLOSET IN THE FIRST OF TWO RESTROOMS.

    *a.   ADAAG 604.5 Grab Bars. Grab bars for water closets shall comply with 609.*
*Grab bars shall be provided on the side wall closest to the water closet and on*
*the rear wall.*

XIV. INACCESSIBLE LAVATORY IN THE SECOND OF TWO RESTROOMS.
REQUIRED MINIMUM KNEE AND TOE CLEARANCE NOT PROVIDED
AT LAVATORY IN THE SECOND OF TWO RESTROOMS.

    *a.   ADAAG 606 Lavatories and Sinks ADAAG 606.2 Clear Floor Space. A clear*
*floor space complying with 305, positioned for a forward approach, and knee*
*and toe clearance complying with 306 shall be provided. ADAAG 306.2 Toe*
*Clearance. ADAAG 306.2.3 Minimum Required Depth. Where toe clearance*
*is required at an element as part of a clear floor space, the toe clearance shall*
*extend 17 inches (430 mm) minimum under the element. ADAAG 306.2.5*
*Width. Toe clearance shall be 30 inches (760 mm) wide minimum. ADAAG*
*306.3 Knee Clearance. ADAAG 306.3.3 Minimum Required Depth. Where*
*knee clearance is required under an element as part of a clear floor space, the*
*knee clearance shall be 11 inches deep minimum at 9 inches above the*
*ground, and 8 inches deep minimum at 27 inches (685 mm) above the finish*
*floor or ground. ADAAG 306.3.5 Width. Knee clearance shall be 30 inches*
*(760 mm) wide minimum.*

XV. INACCESSIBLE HAND DRYER IN THE SECOND OF TWO RESTROOMS.
NON COMPLIANT MOUNTED HEIGHT OF HAND DRYER IN THE
SECOND OF TWO RESTROOMS EXCEEDS MAXIMUM HEIGHT
ALLOWANCE.

    *a.   ADAAG Advisory 606.1 General. If soap and towel dispensers are provided,*
*they must be located within the reach ranges specified in 308. ADAAG 308.2*
*Forward Reach. ADAAG 308.2.1 Unobstructed. Where a forward reach is*
*unobstructed, the high forward reach shall be 48 inches maximum and the low*
*forward reach shall be 15 inches minimum above the finish floor or ground.*
*ADAAG 308.2.2 Obstructed High Reach. Where a high forward reach is over*

*Gibson v. Rivers and Hills  et al*
*Complaint*
**10 |** *P a g e*

*an obstruction, the clear floor space shall extend beneath the element for a distance not less than the required reach depth over the obstruction. The high forward reach shall be 48 inches maximum where the reach depth is 20 inches maximum. Where the reach depth exceeds 20 inches, the high forward reach shall be 44 inches maximum and the reach depth shall be 25 inches maximum. ADAAG 308.3 Side Reach. ADAAG 308.3.1 Unobstructed. Where a clear floor or ground space allows a parallel approach to an element and the side reach is unobstructed, the high side reach shall be 48 inches maximum and the low side reach shall be 15 inches minimum above the finish floor or ground. ADAAG 308.3.2 Obstructed High Reach. Where a clear floor or ground space allows a parallel approach to an element and the high side reach is over an obstruction, the height of the obstruction shall be 34 inches maximum and the depth of the obstruction shall be 24 inches maximum. The high side reach shall be 48 inches maximum for a reach depth of 10 inches maximum. Where the reach depth exceeds 10 inches, the high side reach shall be 46 inches maximum for a reach depth of 24 inches maximum.*

XVI.   INACCESSIBLE MIRROR IN THE SECOND OF TWO RESTROOMS. NON COMPLIANT MOUNTED HEIGHT OF MIRROR IN THE SECOND OF TWO RESTROOMS EXCEEDS MAXIMUM HEIGHT ALLOWANCE.

    a.   *ADAAG 603.3 Mirrors. Mirrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches (1015 mm) maximum above the finish floor or ground. Mirrors not located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 35 inches (890 mm) maximum above the finish floor or ground.*

XVII.   INACCESSIBLE COAT HOOK IN THE SECOND OF TWO RESTROOMS. NON-COMPLIANT HEIGHT OF COAT HOOK IN THE SECOND OF TWO RESTROOMS EXCEEDS MAXIMUM HEIGHT ALLOWANCE.

    a.   *ADAAG 604.8.3 Coat Hooks and Shelves Coat hooks shall be located within one of the reach ranges specified in 308. ADAAG 308.2 Forward Reach. ADAAG 308.2.1 Unobstructed. Where a forward reach is unobstructed, the high forward reach shall be 48 inches maximum and the low forward reach shall be 15 inches minimum above the finish floor or ground. ADAAG 308.2.2 Obstructed High Reach. Where a high forward reach is over an obstruction, the clear floor space shall extend beneath the element for a distance not less than the required reach depth over the obstruction. The high forward reach shall be 48 inches maximum where the reach depth is 20 inches maximum. Where the reach depth exceeds 20 inches, the high forward reach shall be 44 inches maximum and the reach depth shall be 25 inches maximum. ADAAG 308.3 Side Reach. ADAAG 308.3.1 Unobstructed. Where a clear floor or ground space allows a parallel approach to an element and the side reach is unobstructed, the high side reach shall be 48 inches maximum and the low side reach shall be 15 inches minimum above the finish floor or ground. ADAAG 308.3.2 Obstructed High Reach. Where a clear floor or ground space allows a parallel approach to an element and the high side reach is over an obstruction, the height of the obstruction shall be 34 inches maximum and the*

*depth of the obstruction shall be 24 inches maximum. The high side reach shall be 48 inches maximum for a reach depth of 10 inches maximum. Where the reach depth exceeds 10 inches, the high side reach shall be 46 inches maximum for a reach depth of 24 inches maximum.*

Public Exit:

IV. The public exit does not appear to be accessible. See below.
   *Defendants fail to provide accessible means of egress in the number required by the code. See 1991 Standards 4.1.3(9), 2010 Standards 207.1, and 2014 NYC 1007.1.*

22.     Upon information and belief, the above-listed discriminatory violations are not an exhaustive list of  all ADA violations on the Premises. Plaintiff requires an inspection  of Defendant's place of public accommodation in order to identify,  photograph and measure all the barriers to access that constitute discriminatory acts in violation of the ADA.

23.     Notice to Defendant prior to initiating suit is not mandated by the ADA. All other conditions precedent to filing suit have been satisfied or are waived  by Defendant. Defendant's violations of the ADA have been ongoing despite the ADA mandating compliance by no later than January 26, 1992 (or January 26, 1993).

24.     Defendants have failed to ensure that its place of public accommodation and the elements therein are in compliance with the Accessibility Standards, the Administrative Code, and the BCCNY, including but not limited to ensuring the maintenance of accessible features.

25.     The  barriers  to  access  within  Defendants'  place  of  public  accommodation continue to exist.

26.     Plaintiff has a realistic, credible and continuing threat of discrimination from Defendants non-compliance with the laws prohibiting disability discrimination. The barriers to access within Defendants' place of public accommodation continue to exist and deter plaintiff.

27.     Plaintiff  travels  frequently  to  the  shopping  area  and  neighborhood  where Defendants' place of public accommodation is located and patronizes places in the neighborhood.

*Gibson v. Rivers and Hills  et al*
*Complaint*
*12 | P a g e*

28.     Plaintiff intends to patronize the Defendants' place of public accommodation several times a year after they become fully accessible and complaint with the Accessibility Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY.

29.     Plaintiff is also a "tester" for the purposes of asserting basic civil rights and monitoring, ensuring, and determining whether Defendants' place of public accommodation is fully accessible and compliant with the Accessibility Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY.

30.     Plaintiff intends to patronize the Defendants' place of public accommodation several times a year as "tester" to monitor, ensure, and determine whether Defendants' place of public accommodation is fully accessible and compliant with the Accessibility Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY – all for the benefit of those similarly situated to plaintiff.

## FIRST CAUSE OF ACTION
### (VIOLATIONS OF THE ADA)

31.     Plaintiff realleges and incorporates by reference all the allegations set forth in this Complaint as if fully set forth herein.

32.     Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA. As a direct and proximate result of Plaintiff's disability, plaintiff uses a wheelchair for mobility, and has restricted use of her arms and hands.

33.     The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation. 28 C.F.R. 36.201(b).

34.     The Defendants have and continue to subject plaintiff to disparate treatment by denying plaintiff full and equal opportunity to use their place of public accommodation all

*Gibson v. Rivers and Hills  et al*
*Complaint*
*13 | P a g e*

because plaintiff is disabled. Defendants' policies and practices have disparately impacted plaintiff.

35.     By failing to comply with the law, Defendants have articulated to disabled persons such as the plaintiff that they are not welcome, is objectionable and not desired as patrons of their public accommodation.

36.     Defendants have discriminated against plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled plaintiff and not fully compliant with the Accessibility Standards.

37.     Defendants' place of public accommodation is not fully accessible and fails to provide an integrated and equal setting for the disabled in violation of 42 U.S.C. §12182 and 28 C.F.R. § 36.203.

38.     Upon making alterations to their public accommodation, Defendants failed to make their place of public accommodation accessible to plaintiff to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406.

39.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304. It would be readily achievable to make Defendants' place of public accommodation fully accessible.

40.     By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against plaintiff based on disability in violation of § 302 of the ADA, 42 U.S.C. §12182, and 28 C.F.R. §36.304.

41.     In the alternative, Defendants have violated the ADA by failing to provide plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

42.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et seq*. and 28 C.F.R. §

36.202 *et seq.*

43.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on property owners to repave, reconstruct, repair, and maintain its abutting public sidewalk. As a result, within the meaning of the ADA, RIVERS AND HILLS HOSPITALITY GROUP LLC D/B/A WAYLA continuously controlled, managed, and operated the sidewalk abutting the Premises, which includes the portion of the sidewalk constituting the entrance to Defendants' place of public accommodation.

44.     100 FORSYTH, LLC's failure to construct and maintain an accessible entrance from the public sidewalk to Defendants' place of public accommodation constitutes disability discrimination in a violation of the ADA.

45.     Defendants have and continue to discriminate against plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

## SECOND CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE EXECUTIVE LAW)

46.     Plaintiff realleges and incorporates by reference all the allegations set forth in this Complaint as if fully set forth herein.

47.     Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions.  Plaintiff cannot perform the life activities of both walking and body motion range. Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 296(21).

48.     Defendants have and continue to subject plaintiff to disparate treatment by denying plaintiff equal opportunity to use their place of public accommodation all because plaintiff is disabled.

49.     Defendants discriminated against plaintiff in violation of New York State

*Gibson v. Rivers and Hills  et al*
*Complaint*
*15 | P a g e*

Executive Law § 296(2), by maintaining and/or creating an inaccessible place of public accommodation. Each Defendant has aided and abetted others in committing disability discrimination.

50.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law § 296(2) (c)(iii).

51.    In the alternative, Defendants have failed to provide plaintiff with reasonable alternatives to barrier removal as required in violation of Executive Law § 296(2)(c)(iv).

52.    It would be readily achievable to make Defendants' place of public accommodation fully accessible.

53.    It would not impose an undue hardship or undue burden on Defendants to make their place of public accommodation fully accessible.

54.    As a direct and proximate result of Defendants' unlawful discrimination in violation of New York Executive Law, plaintiff has suffered and continue to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

55.    Plaintiff has suffered damages in the amount of at least **Fifty Thousand Dollars ($50,000.00)** from each Defendant and the total amount shall be determined at trial.

## THIRD CAUSE OF ACTION
### (VIOLATIONS OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK)

56.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

57.    Plaintiff suffers from various medical conditions that separately and together impair plaintiff's bodily systems – in particular, the life activity of walking and body motion range – and thus plaintiff has a disability within the meaning of the Administrative Code § 8-

*Gibson v. Rivers and Hills et al*
*Complaint*
**16 | P a g e**

102(16).

58.     The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the New York City's Human Rights Law. The Restoration Act confirmed the legislative intent to abolish "parallelism" between the Administrative Code and the Federal and New York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed. Restoration Act§7 amending Administrative Code § 8-130.

The Restoration Act is fully to be construed as broadly in favor of plaintiff as possible.

59.     Defendants have and continue to subject plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the Administrative Code § 8-107(4). Each Defendant has aided and abetted others in committing disability discrimination.

60.     Defendants have discriminated and continue to discriminate against plaintiff in violation of the Administrative Code § 8-107(5)(b) by designing, creating and/or maintaining an inaccessible commercial facility/space.

61.     Defendants have subjected and continue to subject plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the Administrative Code § 8-107(5)(b).

62.     In violation of Administrative Code § 8-107(6), Defendants have and continue to aid and abet, incite, compel or coerce each other in each of the other defendants' attempts to, and

*Gibson v. Rivers and Hills  et al*
*Complaint*
17 | P a g e

in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the Administrative Code.

63. Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk. As a result, defendants continuously controlled, managed, and operated the sidewalk abutting the Premises, which includes the portion of the sidewalk constituting the entrance to Defendants' place of public accommodation.

64. Defendants' failure to construct and maintain an accessible entrance from the public sidewalk to Defendants' place of public accommodation constitutes disability discrimination in a violation of the Administrative Code.

65. Defendants discriminated against plaintiff in violation of the Administrative Code § 8-107(4) and Local Law 58 by maintaining and/or creating an inaccessible public accommodation.

66. As a direct and proximate result of Defendants' unlawful discrimination in violation of the Administrative Code, plaintiff have suffered and continue to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

67. Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculate, egregious, and undertaken with reckless disregard to plaintiffs' rights under the Administrative Code.

68. By failing to comply with the law, Defendants have articulated to disabled persons such as the plaintiff that he is not welcome, is objectionable and not desired as patrons of their public accommodation.

*Gibson v. Rivers and Hills et al*
*Complaint*
*18 | P a g e*

69.     Defendants' unlawful discriminatory conduct constitutes malicious, willful and wanton violations of the Administrative Code for which plaintiff are entitled to an award of punitive damages.  Administrative Code § 8-502.

70.     By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space. Defendants' unlawful profits plus interest must be disgorged.

71.     Plaintiff has suffered damages in the amount of at least **Fifty Thousand Dollars ($50,000.00)** from each Defendant and the total amount shall be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

72.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

73.      Defendants discriminated against plaintiff pursuant to New York State Executive Law.

74.     Consequently, plaintiff is entitled to recover the penalty prescribed by Civil Rights Law § 40-c and 40-d, in the amount of **Five Hundred Dollars ($500.00)** per defendant for each and every barrier and violation.

75.     Notice of Defendants' violations and this action has been served upon the Attorney General as required by Civil Rights Law § 40-d. (*See* Exhibit A attached hereto).

## FIFTH CAUSE OF ACTION
### (COMMON LAW NEGLIGENCE)

76.     Plaintiff realleges and incorporates by reference all allegations set forth in this

*Gibson v. Rivers and Hills  et al*
*Complaint*
*19 | P a g e*

Complaint as if fully set forth herein.

77.    Defendants negligently designed, constructed, operated, repaired and maintained their place of public accommodation located at the Premises in a manner that has rendered their place of public accommodation unsafe to the disabled plaintiff.

78.    At all relevant times, Defendants, who hold their property open to the public, have had a duty to patrons such as plaintiff to design, construct, operate, repair and maintain their place of public accommodation located at the Premises in a reasonably safe condition, including a duty to comply with the Administrative Code.

79.    Defendants breached their duty by negligently designing, constructing, operating, repairing and maintaining their place of public accommodation located at the Premises in a manner that has unreasonably endangered the plaintiff's physical safety and caused plaintiff to fear for plaintiff safety.

80.    Defendants' failure to design, construct, operate, repair and maintain their place of public accommodation located at the Premises is not safe to the disabled.

81.    As a direct result of Defendants' negligence, plaintiff have suffered and continue to suffer emotional distress damages in an amount to be determined at trial.

## INJUNCTIVE RELIEF

82.    Plaintiff will continue to experience unlawful discrimination as a result of Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief is necessary to order Defendants to alter and modify their place of public accommodation and their operations, policies, practices, and procedures.

83.    Injunctive relief is also necessary to make Defendants' facilities readily accessible to and usable by plaintiff in accordance with the above-mentioned laws.

84.    Injunctive relief is further necessary to order Defendants to provide auxiliary aids

*Gibson v. Rivers and Hills  et al*
*Complaint*
*20 | P a g e*

or services, modification of their policies, and/or provisions of alternative methods in accordance with the ADA, Executive Law and the Administrative Code.

## DECLARATORY RELIEF

85.     Plaintiff is entitled to a declaratory judgment concerning each of the accessibility violations committed by Defendants against plaintiff and as to required alterations and modifications to Defendants' place of public accommodation, facilities, goods and services, and to Defendants' policies, practices and procedures.

## ATTORNEY'S FEES, EXPENSES AND COSTS

86.     In order to enforce plaintiff's rights against the Defendants, plaintiff has retained counsel and are entitled to recover attorney's fees, expenses and costs pursuant to the ADA and the Administrative Code. 42 U.S.C. § 12205; 28 C.F.R. § 36.505; and Administrative Code § 8-502.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests that the Court enter a judgment against Defendants, jointly and severally, in favor of plaintiff that contains the following relief:

A. Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, Executive Law and Administrative Code and declaring the rights of plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices and procedures;

B. Issue a permanent injunction ordering Defendants to close and cease all business until Defendants remove all violations of the ADA, the Accessibility Standards, Executive Law and Administrative Code, including but not limited to the violations set forth above;

C. Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

*Gibson v. Rivers and Hills et al*
*Complaint*
*21 | P a g e*

D. Find Defendants guilty of a class A misdemeanor for violating New York State Civil Rights Law pursuant to New York State Civil Rights Law § 40-d;

E. Award at least **FIFTY THOUSAND DOLLARS ($50,000.00)** to plaintiff as compensatory damages, per defendant, plus pre-judgment interest, as a result of Defendants' violations of New York State Executive Law and the Administrative Code of the City of New York;

F. Award at least **FIFTY THOUSAND DOLLARS ($50,000.00)** to plaintiff as punitive damages, per defendant, in order to punish and deter Defendants for their violations of the Administrative Code of the City of New York;

G. Award plaintiff **FIVE HUNDRED DOLLARS ($500.00)** for each and every barrier and violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

H. Award reasonable attorney's fees, costs and expenses pursuant to the Administrative Code;

I. Find the plaintiff is a prevailing party in this litigation and award reasonable attorney's fees, costs and expenses pursuant to the ADA;

J. Any such other and further relief the Court shall deem just and proper.

Dated:  Syosset, New York
        January 13, 2023

                            Respectfully submitted,

                            BELL LAW GROUP, PLLC

                            By: _____
                            Jonathan Bell, Esq.
                            Attorneys for Plaintiff
                            100 Quentin Roosevelt Blvd, Suite 208
                            Garden City, NY 11530
                            (516) 280-3008
                            JB@BellLG.com

*Gibson v. Rivers and Hills  et al*
*Complaint*
*22 | P a g e*